# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL LUDOLPH | Case No. CV 14-CV-00420-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Respondent. | |

Now pending before the Court is Petitioner Michael Ludolph's Petition for Review (Dkt. 1), filed September 29, 2014, seeking review of the Social Security Administration's final decision to deny him disability benefits.  This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

In October of 2008, Petitioner sustained an injury to his left shoulder while attempting to pull himself out from under a deck while working at his job as a construction carpenter.  (AR 284, 287). The injury was first diagnosed as a SLAP lesion and then as a rotator cuff tear. (AR 304).  An MRI conducted in February of 2009 also showed degenerative changes to the AC joint. (AR 16). When surgeries and physical therapy failed to cure Petitioner's shoulder pain, he sought Social Security Disability Insurance ("SSDI") Benefits.

Petitioner applied for SSDI benefits on December 6, 2011, alleging a disability onset date

**MEMORANDUM DECISION AND ORDER - 1**

of October 15, 2008. The claim was initially denied on April 25, 2012 and also denied upon

reconsideration on May 31, 2012. (AR 12). The Petitioner thereafter requested a hearing before

an Administrative Law Judge ("ALJ"), which was held on August 15, 2013. (AR 25-61). ALJ

Marie Palachuk presided over the hearing, at which the Petitioner was present and represented

by his attorney, Mark Jones. A medical expert, Peter Schosheim, a vocational expert, K. Diane

Kramer, and Petitioner's wife, Bonnie Ludolph, all testified at the hearing. (Id.). At the time of

the hearing, Petitioner was 45 years old, and had past work experience as a construction

carpenter and mail carrier. (AR 20).

On September 13, 2013, the ALJ issued a decision, denying Petitioner's claims, finding

that Petitioner was not disabled within the meaning of the Social Security Act.  (AR 9-25).

Petitioner timely requested review from the Appeals Council on February 25, 2014. (AR 8.)  The

Appeals Council then denied review on August 26, 2014. (AR 1-5), rendering the ALJ's decision

the Commissioner's final decision.[1]  Plaintiff now seeks judicial review of the Commissioner's

decision to deny benefits.  Petitioner contends the ALJ erred by: 1) giving insufficient weight to

a consultive examination by Idaho Disability Determination Services, due to a mistaken belief

that the examining physician was evaluating whether the Petitioner was entitled to workers'

compensation benefits, as opposed to disability benefits; and 2) by arriving at a residual

functional capacity (RFC)  determination that failed to fully account for Petitioner's limitations

---

[1] The Appeals Commission looked at new medical records that the Petitioner had submitted, dated from November 6, 2013 to May 29, 2014. Because this new information was from the time period after the ALJ had issued her decision, the Appeals Commission did not consider it in deciding whether to affirm the ALJ's decision, but instead, instructed Petitioner that he could file a new claim for disability for the time period after September 13, 2013. (AR 1-2). Therefore, this Court also restricts its review to the same time period, i.e. from October 2008 to September 13, 2013.

**MEMORANDUM DECISION AND ORDER - 2**

on reaching, handling, and fingering with his left arm.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir. 1996); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 12035, 1039 (9th Cir. 1995); *Allen v.*

**MEMORANDUM DECISION AND ORDER - 3**

*Heckler*, 749 F.2d 577, 579 (9th Cir. 1989). The ALJ is also responsible for drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a),

**MEMORANDUM DECISION AND ORDER - 4**

416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not

a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA,

disability benefits are denied, regardless of how severe her physical/mental impairments are and

regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If

the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ

found that the claimant had not engaged in SGA since October 15, 2008, the alleged onset date

of the disability. (AR 14).

        The second step requires the ALJ to determine whether the claimant has a medically

determinable impairment, or combination of impairments, that is severe and meets the duration

requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of

impairments is "severe" within the meaning of the Social Security Act if it significantly limits an

individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An

impairment or combination of impairments is "not severe" when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no

more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.

If the claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the

ALJ found that Petitioner had the following severe impairments: left shoulder pain secondary to

a rotator cuff tear and ligament injury, chronic varicose veins in both legs, and lower back pain

without significant objective findings. In addition to these severe impairments, the ALJ noted

that Petitioner had hearing loss that was correctable with hearing aids, that did not have more

than a minimal impact on his ability to perform basic work functions.  (AR 14.)

**MEMORANDUM DECISION AND ORDER - 5**

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the ALJ concluded that Petitioner did not have an impairment or combination of impairments that met or medically equalled the severity of one of hte listed impairments. (AR 14.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that the Petitioner had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), subject to certain limitations. (AR 15). Those limitations included being able to stand or walk for only four hours out of an eight hour workday, and needing to alternate sitting and standing approximately every thirty minutes. (*Id.*). The ALJ also noted that while the Petitioner could perform all postural

**MEMORANDUM DECISION AND ORDER - 6**

movements occasionally, he could not crawl or climb ladders, ropes or scaffolds. (*Id.*). Crucially for the discussion herein, the ALJ also concluded that the Petitioner could occasionally reach with his left arm, but could seldom reach overhead with that arm. (*Id.*). In reaching her RFC determination, the ALJ concluded that while the Petitioner's impairments could be expected to cause some of his alleged symptoms, the record did not fully corroborate his claims concerning the intensity, persistence, and limiting effects of those symptoms. (AR 16). Finally, the ALJ concluded that the Petitioner should avoid concentrated exposure to extreme temperatures, industrial vibrations, and even moderate exposure to industrial noise, as well as all exposure to hazards. (*Id.*). These limitations precluded Petitioner from engaging in his past relevant work.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. The ALJ found, at step five, that Petitioner is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (AR 20-21.)

## B.     Analysis

### 1.     Weight Given to the Consultive Examination of Idaho Disability Determination Services

First, the Court concludes that the ALJ appropriately considered the opinion of Dr. Rob Fuller, obtained in connection with an evaluation by the State of Idaho's Disability

**MEMORANDUM DECISION AND ORDER - 7**

Determination Service. To the extent that the ALJ mistakenly stated that Dr. Fuller conducted this consultive examination for the purpose of determining whether Petitioner was eligible for workers' compensation benefits as opposed to disability benefits, such error was harmless.

Dr. Fuller examined Petitioner on April 16, 2012, and conducted a number of tests and exercises designed to identify range of motion values for Petitioner's shoulders, elbows, knees, wrists, hips and cervical and lumbar spine areas. (AR 486-489). At the end of his report, in a section titled, "Impressions," Dr. Fuller stated, "Mr. Ludolph suffers from a severe pain in his left shoulder due to injury that has not been relieved from three surgeries. He is unable to lift, carry, push, pull or handle objects with his left arm. He is able to walk and stand but because of increasing pain he is unable to work." (AR 491).

The ALJ observed that while Dr. Fuller had concluded that Petitioner was unable to lift, carry, push, pull, or handle objects with his left arm, in making these determinations, Dr. Fuller appeared to rely almost exclusively on Petitioner's subjective complaints of pain. (AR at 19). The ALJ also noted that Dr. Fuller's opinion was inconsistent with what she described as the "extremely limited" findings from his physical examination of Petitioner, and also inconsistent with the opinions of his treating providers. (*Id.*). The Ninth Circuit has held that an ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions." *See, e.g. Molina v. Astrue,* 674 F.3d 1104,1111 (9th Cir. 2012); *Crane v. Shalala,* 76 F.3d 251, 253 (9th Cir.1996); see also *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir.2001) (observing that the regulations "give more weight to opinions that are explained than to those that are not."). The ALJ did not err in deciding that Dr. Fuller's opinions were conclusory and for that reason, declining to give them little weight.

**MEMORANDUM DECISION AND ORDER - 8**

There was also no error in the ALJ's decision to give greater weight to the opinions of providers other than Dr. Fuller. The ALJ also noted that in contrast to Dr. Fuller's opinions, Petitioner's treating orthopedist, Dr. John Faggard, had consistently maintained that Petitioner was capable of working at least at a sedentary level, excluding periods of post-surgical recovery. (AR 18-19, 470 ). This conclusion by the ALJ is fully supported in the record. For example, on July 15, 2009, several weeks after Petitioner underwent surgery to repair his rotator cuff, Dr. Faggard indicated that Petitioner was fit to return to sedentary work. (AR 341). On February 16, 2011, after Petitioner underwent a suprascapular nerve release procedure, Dr. Faggard again indicated that after a few weeks for recovery he'd be able to return to work involving sedentary duties. (AR 470). On May 10, 2011, Dr. Faggard opined that Petitioner was capable of returning to his pre-injury job as a construction carpenter, subject to having only very limited use of his left arm above the waist level. (AR 483).  The ALJ indicated that she was according "some" weight to Dr. Faggard's opinions that Petitioner was generally capable of performing some work.[2]          In an RFC Assessment Questionnaire completed in June of 2012, just two months after Dr. Fuller's evaluation, Dr. Faggard indicated that Petitioner was capable of reaching less than five percent of the time with his left arm, but identified no restrictions on fingering and handling with the hand of that arm. (AR 495). The ALJ accorded these opinions "significant" weight in making her determination about Petitioner's residual functional capacity. (AR 19). The

---

[2] Dr. Faggard's apparent belief that Petitioner could return to his pre-injury work as construction carpenter is probably anomalous, considering the significant limitations placed on the use of his left arm. However, the ALJ did not appear to credit that statement by Dr. Faggard, which was not consistent with the testimony of the Vocational Expert. In any case, the government does not even argue here that Petitioner is capable of returning to his past relevant employment. (AR 19 & 56).

**MEMORANDUM DECISION AND ORDER - 9**

limitations Dr. Faggard identified in his June 2012 RFC Assessment Questionnaire were in direct conflict to those Dr. Fuller had described just two months earlier. It was the ALJ's duty to resolve conflicts in the medical evidence. *Allen v. Heckler*, 749 F.2d at 579.  She did not err by deciding to assign more weight to the opinions of the orthopedic surgeon who had treated Petitioner over the course of several years as opposed to a consultive physician who saw him only on one occasion. *Turner v. Comm'r Soc. Sec. Admin.* 613 F.3d 1217, 1222 (9th Cir. 2010) (holding that opinions of treating physicians are generally entitled to greater weight than those of examining or consulting physicians, who do not treat a patient).

Despite these sound reasons for giving little weight to the opinion of Dr. Fuller, Petitioner argues that the ALJ committed "grave error," because in addition to the reasons stated above, the ALJ also mistakenly believed that Dr. Fuller's opinion had been formulated for the purpose of a worker's compensation claim, as opposed to a disability claim. (AR 19). Though not explored in great detail in the briefing, Petitioner's argument appears to be that because the ALJ believed Dr. Fuller was applying a different and arguably less stringent standard in deciding whether Petitioner was capable of working, she may have erroneously discounted his opinion. In response, the Commissioner concedes that the ALJ was mistaken when she stated that Dr. Fuller was assessing Petitioner's ability to work in the context of a workers' compensation claim, as opposed to a disability claim. (Respondent's Brief, p. 8, n. 3, Dkt. 19). However, the Commissioner also argues that this oversight on the part of the ALJ was at most harmless error, and that looking at the record overall, the ALJ's decision was supported by substantial evidence.

The Court agrees. Had the ALJ discounted Dr. Fuller's opinion *solely* out of the mistaken notion that Dr. Fuller was assessing Petitioner in the context of a workers compensation claim,

**MEMORANDUM DECISION AND ORDER - 10**

the case for remand might be somewhat stronger. *Cf. Molina v. Astrue,* 674 F.3d 1104, 1322-23 (9th Cir. 2012) (Graber, J., dissenting) (observing that reviewing courts typically do not weigh evidence, and therefore, if an ALJ fails to give reasons for ignoring a particular piece of evidence or testimony, it will typically be credited as true). However, as explained above, the ALJ cited a number of different reasons for giving Dr. Fuller's opinion little weight, besides the belief that Dr. Fuller was assessing Petitioner in the context of a workers' compensation claim. Generally, where an ALJ gives more than one reason for discrediting a particular piece of testimony or evidence, courts will uphold her decision even if one of the stated reasons for discrediting the evidence is subsequently determined to be erroneous. *See, e.g. Batson v. Comm'r of Soc. Sec. Admin,* 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Ultimately, however, the ALJ based her decision  to deny benefits on two primary factors: 1) the specific limitations identified in the RFC Assessment undertaken by Dr. Faggard, which were verified by several other consulting and/or testifying medical experts,  and 2) the testimony of the Vocational Expert who opined that there were jobs in the national economy that Petitioner would be capable of performing, even taking those limitations into account. Apart from the opinions of Dr. Fuller, which the ALJ appropriately decided to give little weight, the medical evidence as to what work-related tasks Petitioner can and cannot perform was remarkably consistent.

The Petitioner's first RFC evaluation occurred in July of 2010, and was conducted by a physical therapist named John Pratt. (433-444). Notably, Mr. Pratt did not feel that Petitioner had put forth maximal effort during the some of the tests that were conducted. (AR 434). Nevertheless, he identified functional deficits in the following areas: 1) lifting more than ten

**MEMORANDUM DECISION AND ORDER - 11**

pounds, (albeit with some retained ability to use the right arm for "waist to floor" lifting procedures); 2) climbing, and 3) reaching above the shoulder with the left hand. (AR 435-436). With respect to below the shoulder reaching, Mr. Pratt stated that Petitioner could perform such tasks with the right hand, but that he was "limited in his ability to reach with the left, especially if reaching to especially if reaching to lift an object that is away from the body." (AR 436). Mr. Pratt also opined that Petitioner was capable of performing tasks that involved fingering and handling, especially if they were performed at torso height. (*Id.*). Though this RFC evaluation was done before the sub-scapular nerve release procedure, it was more or less consistent with the conclusions that Dr. Faggard reached in June of 2012, long after that procedure was done. (AR 495). State agency consultants reached the same conclusions as to Petitioner's specific limitations as did Dr. Faggard and Mr. Pratt. (AR 63-86). The first of these indicated that Petitioner was capable of only "limited" left overhead reaching, but specifically indicated that there were no limitations on fingering and handling. (AR 69). The reviewing physician also concluded that Dr. Fuller's opinion was "an overestimate of the severity of the individual's restrictions/limitations and based only on a snapshot of the individual's functioning." (AR 72). Another reviewing physician reached identical conclusions. (AR 81-86).

Given this substantial evidence supporting the ALJ's decision, the Court is not persuaded that the outcome would have been different but for the ALJ's mistaken assumption as to the purpose of Dr. Fuller's consultive examination.

> **2.      The Hypotheticals Posed to the Vocational Expert Fully Accounted for Petitioner's Left Arm Deficits.**

Nor is the Court persuaded by Petitioner's alternate argument that the jobs the Vocational

**MEMORANDUM DECISION AND ORDER - 12**

Expert identified–advertising material distributor, outside deliverer, and mail clerk–all require an employee to have free use of both arms. The transcript of the hearing held before the ALJ indicates that both the ALJ and the Vocational Expert were fully aware that while Petitioner had no restrictions on the use of his right arm, he had significant deficits with his left arm. (AR 57-59). The hypothetical questions the ALJ posed to the Vocational Expert took into account all of Petitioner's specific limitations, including the limitation that Petitioner could "seldom" reach overhead with his left arm and could only "occasionally" reach in other directions with that arm. (AR 57-58). This was consistent with the medical evidence, described above, that identified overhead left arm reaching as Petitioner's primary deficit.

The following exchange between the Vocational Expert and Petitioner's attorney indicates that the Vocational Expert  was fully aware of that Petitioner's left arm deficits:

Q (by the ALJ): And I assume all three of these jobs require the ability to drive? The ones you identified?

A( by the VE):  No, the mail clerk doesn't, no. Advertising material, yes, and deliverer, outside, yes. Mail clerk, no. That just would be a mail clerk within an office setting where they just sort the mail and deliver it to different units. That's what I mean by mail clerk.

Q: Okay, so that would not require the mail clerk position for the individual to be able to hold their hand up above their head or place objects above their head?

A: Since he is right-hand dominant and there were no restrictions placed on the right hand, he can do that with the right hand and that's only usually on an occasional basis.

(AR 58-59). Petitioner's assertion that the ALJ failed to take into account the differences in his right and left arm simply finds no support in the record.

Finally, Petitioner argues that the ALJ erred by identifying jobs that required frequent

**MEMORANDUM DECISION AND ORDER - 13**

fingering and handling with both hands. However, the only provider who placed any limitations on fingering and handling was Dr. Fuller, and for the reasons explained above, the ALJ gave little weight to his opinions. Neither Dr. Faggard, nor the physical therapist who conducted the extensive RFC evaluation, nor the state consultive physicians, placed any limitations whatsoever on Petitioner's ability to perform fingering and handling tasks with either hand. Nor did the medical expert who testified at the hearing, Dr. Peter Schosheim, place any limitations on Petitioner's fingering and handling capacities. In short, the record fully supports the ALJ's conclusion that Petitioner had significant limitations on gross motor movements of the left shoulder secondary to his shoulder injury, and some limitations on walking, sitting and standing related to vascular issues and/or low back pain, but no limitations on fingering and handling with either the left or the right hand.

The ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## IV.  ORDER

Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is **DENIED,** the

**MEMORANDUM DECISION AND ORDER - 14**

decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.



DATED:  **March 28, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**